JUDGE FRANK MONTALVO

## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## EL PASO DIVISION

FILED

2023 AUG 28  AM 10: 54

CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY_____
DEPUTY

| | |
|---|---|
| MANUEL GUADIAN, | § |
| | § |
| Plaintiff, | § |
| | § |
| v. | § |
| | § |
| NATIONAL TAX ADVISORY SERVICES | § |
| LLC a California Limited Liability Company and | § |
| TAX RELIEF HELPERS, INC | § |
| a California Corporation | § |
| Matthew Levy | § |
| | § |
| Defendants. | § |
| | § |

EP23CV0328

## PLAINTIFF'S ORIGINAL COMPLAINT

Pro Se Plaintiff Manuel Guadian files this Complaint against Defendant TAX

RELIEF HELPERS INC, NATIONAL TAX ADVISORY SERVICES LLC AND

MATTHEW LEVY for violations of (1) the Federal Telephone Consumer Protection Act

("TCPA") and its regulations and the (2) the Texas Business and Commerce Code

"TBCC" law governing telephone solicitations, alleging as follows.

## PARTIES

1.      Plaintiff MANUEL GUADIAN ("Plaintiff") is a natural person and is a citizen of the

Western District of Texas and was present in the Western District of Texas during all calls at

issue in this case.

2.      Defendants NATIONAL TAX ADVISORY SERVICES, LLC ("National") is a Limited

Liability Company organized and existing under the laws of California and can be served via

1

registered agent The Law Offices of Keith F. Elder, a Professional Corporation c/o Keith F. Elder at 21550 Oxnard Street, Suite 630 Woodland Hills, California 91367.

3.     Defendants TAX RELIEF HELPERS, INC ("TAX RELIEF") is a California Corporation organized and existing under the laws of California and can be served via registered agent The Law Offices of Keith F. Elder, a Professional Corporation c/o Keith F. Elder at 21550 Oxnard Street, Suite 630 Woodland Hills, California 91367.

4.     Defendants MATTHEW LEVY ("Levy") is a natural person, resident of California, and Chief Executive Officer of National and can be served at 6163 White Oak Avenue Encino, California 91316.

5.     Defendants National Tax Advisory Services LLC and Tax Relief Helpers principal's place of business is 16661 Ventura Blvd. Penthouse Encino CA, 91436.

6.     Defendants Tax Relief Helpers, Inc, National Tax Advisory Services and Matthew Levy (together "Defendants")

7.     Unnamed Party Empower People ("Empower") is an unidentified offshore telemarketing company that makes solicitation phone calls at the instruction, direction, and oversight of Defendant Guardian.

## NATURE OF ACTION

8.     As the Supreme Court recently explained, "Americans passionately disagree about many things. But they are largely united in their disdain for robocalls. The Federal Government receives a staggering number of complaints about robocalls—3.7 million complaints in 2019 alone. . . . For nearly 30 years, the people's representatives in Congress have been fighting back." *Barr v. Am. Ass'n of Pol. Consultants LLC*, 140 S. Ct. 2335, 2343 (2020).

9.     Plaintiff brings this action under the Telephone Consumer Protection Act ("TCPA"), 47

U.S.C. § 227, alleging that Empower placed unauthorized phone calls to him on behalf of

Defendants in violation of the TCPA.

10.     Plaintiff never consented to receive any of these phone calls, which were placed to him

for telemarketing purposes.

## JURISDICTION AND VENUE:

11.     This Court has federal subject matter jurisdiction under 28 U.S.C. § 1331, as this case

arises under the Telephone Consumer Protection Act, 47 U.S.C. § 227, which is a federal statute.

12.     This Court has supplemental subject matter jurisdiction over Plaintiff's claim arising

under Texas Business and Commerce Code 305.053 because that claim arises from the same

nucleus of operative fact, i.e., Defendant's telemarketing calls to Plaintiff, and adds little

complexity to the case, so it is unlikely to predominate over the TCPA claims.

13.     This Court has personal jurisdiction over Defendant because they conduct business in this

District and in the State of Texas and because the events giving rise to this lawsuit occurred in

this District.

14.     Venue is proper in this District pursuant to 28 U.S.C. §1391(b) because Defendant

regularly conduct business in the State of Texas and in this District, and because the wrongful

conduct giving rise to this case occurred in this District.

## THE TELEPHONE CONSUMER PROTECTION ACT OF 1991, 47 U.S.C. § 227

15.     In 1991, Congress enacted the TCPA to restrict the use of sophisticated telemarketing

equipment that could target millions of consumers *en masse*. Congress found that these calls

were not only a nuisance and an invasion of privacy to consumers specifically but were also a

threat to interstate commerce generally. *See* S. Rep. No. 102-178, at 2-3 (1991), as reprinted in 1991 U.S.C.C.A.N. 1968, 1969-71.

16.     The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice ... to any telephone number assigned to a ... cellular telephone service." 47 U.S.C. § 227(b)(1)(A)(iii).

17.     The TCPA makes it unlawful "to initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party, unless the call is initiated for emergency purposes, is made solely pursuant to the collection of a debt owed to or guaranteed by the United States or is exempted by rule or order" of the Federal Communication Commission ("FCC"). 47 U.S.C. § 227(b)(1)(B).

18.     The TCPA provides a private cause of action to persons who receive calls in violation of § 227(b). 47 U.S.C. § 227(b)(3).

19.     Separately, the TCPA bans making telemarketing calls without a do-not-call policy available upon demand. 47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(d)(1).[1]

20.     The TCPA provides a private cause of action to persons who receive calls in violation of § 227(c) or a regulation promulgated thereunder. 47 U.S.C. § 227(c)(5).

21.     According to findings of the FCC, the agency vested by Congress with authority to issue regulations implementing the TCPA, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls and can be costly and inconvenient.

---

[1] *See* Code of Federal Regulations, Title 47, Parts 40 to 60, at 425 (2017) (codifying a June 26, 2003 FCC order).

4

22.    The FCC also recognizes that "wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used." *In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 FCC Rcd. 14014, 14115 ¶ 165 (2003).

23.    The FCC requires "prior express written consent" for all autodialed or prerecorded telemarketing robocalls to wireless numbers and residential lines.  In particular:[A] consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer:  (1) received clear and conspicuous disclosure of the consequences of providing the requested consent, *i.e.*, that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates. In addition, the written agreement must be obtained without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any goods or service.

24.    *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 FCC Rcd. 1830, 1844 ¶ 33 (2012) (footnote and internal quotation marks omitted). FCC regulations "generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 10 FCC Rcd. 12391, 12397 ¶ 13 (1995).

25.    The FCC confirmed this principle in 2013, when it explained that "a seller …may be held vicariously liable under federal common law principles of agency for violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers." In the Matter of the Joint Petition Filed by Dish Network LLC, 28 FCC Rcd. 6574, 6574 ¶ 1 (2013).

26.    Under the TCPA, a text message is a call.  *Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663 (2016).

## **FACTUAL ALLEGATIONS:**

27.    Plaintiff successfully registered his personal cell phone number ending in -6018 on the National Do-Not-Call Registry since March 5, 2023, which was more than 31 days prior to receiving the alleged calls.

28.    Plaintiff never asked the National Do-Not-Call Registry administrator to remove his phone number from the National Do-Not-Call Registry and Plaintiff was on the National Do-Not-Call Registry at all times relevant to this Complaint.

29.    As part of their marketing, Defendant hired and instructed an anonymous offshore telemarketing company named Empower People ("Empower') to make phone calls on behalf of Defendants to tele solicit their tax relief services.

30.    Empower unknown entity, that through information and belief, is located offshore and out of the jurisdiction of the United States and the State of Texas.

31.    Empower makes solicitation telephone calls at the direction, instruction, and guidance of Defendants.

32.    Defendants offer tax debt relief services to consumers who owe taxes to the IRS.

33.    Defendant Levy is the Chief Executive officer of National and controls and dominates National Tax Advisory Services.

34.    Defendant Levy approves of the contracts with the telemarketers who make illegal robocalls with artificial or prerecorded voice messages to thousands of consumers cellular and residential phone numbers using an ATDS.

35.    Defendant Levy authorizes the payments to the telemarketers.

36.    Defendant Levy pays the telemarketers out of bank accounts he owns and controls.

37.     Defendant Levy provides instruction and guidance on who to solicit and the minimum qualifications of potential clients.

38.     Defendant Levy has full control over Defendants and has the authority to stop the illegal robocalls, however has refused to do so because it benefits Defendants and its CEO Levy financially.

39.     Defendant Levy approves of the scripts when calling consumers (like the ones alleged in this complaint) with the prerecorded messages that say "This is an urgent and time sensitive matter from Empower People about funding your hardship account, you have been prequalified for a hardship benefit to pay your bills, this is the game changer you need if you have over ten thousand dollars in unsecured debt. Press "1" if you have more than ten thousand dollars in unsecured debt."

40.     Plaintiff received at least twelve (12) unauthorized calls ("the calls") to Plaintiff's phone number ending in 6018 from Empower calling on behalf Defendants soliciting debt relief services.

41.     The alleged calls were made to Plaintiff by using a prerecorded voice message or automated text message.

42.     The prerecorded voice messages and automated text messages were soliciting debt relief services on behalf of Defendants.

43.     The prerecorded voice messages and automated text messages do not identify Defendant Tax Relief Helpers and National Tax Advisory.

44.     The prerecorded voice messages and automated text messages left call back numbers for Plaintiff to call.

45.     Plaintiff received one of the following prerecorded voice messages on some of the

alleged calls that stated,

"Important notification and how are people has a crucial message regarding your financial
assistance account you've been pre-approved for a financial assistance program that could be the
key to your financial liberation struggling with more than $10,000 in unpaid financial
commitment we have your answer dial 888-741-1216 immediately to access the government
supported financial relief program this can be used to address medical bills credit card liabilities
anything that's been hindering you picture eradicating $23,923 from your financial obligations
today if you over $10,000 in unpaid this is your golden opportunity time is of the essence 877-
498-0274"

"Attention this is an urgent message for power people about your financial assistance account
you've been selected for a financial assistance program designed to open the door to your
financial independence encumbered with more than $10,000 in funds settled financial obligations
we have your lifeline called 877-331-2381 instantly to learn about our government endorsed
financial relief program apply it towards any outstanding medical bills credit card liabilities
anything that's going to hurdle visualize clearing $23,923 off your financial responsibilities today
if your shouldering over $10,000 in unpaid commitments this is your golden ticket time is ticket
844-216-1538"

46.     Plaintiff called the numbers left in the prerecorded voice messages and automated text

messages and would be connected to telemarketers from Empower.

47.     The telemarketers from Empower solicited Plaintiff for debt relief services and

transferred Plaintiff to representatives from Defendants.

48.     The representatives from EMPOWER PEOPLE solicited Plaintiff for a debt relief

program on behalf of Defendants.

49.     Plaintiff on multiple occasions advised the telemarketers from Empower to stop calling

his personal cell phone 6018.

50.     Defendant NATIONAL shares a portal database with Empower which allows Empower

to transfer new client leads directly to Defendants.

51.     Plaintiff never gave his prior express written consent to receive any of the alleged calls

and/or text messages.

8

52.     None of the alleged calls/text messages were made to Plaintiff for emergency purposes.

53.     On July 12, 2023, Plaintiff made an outbound call responding to a text message from phone number 385-297-0254 from Empower People with a call back number shown in text message of 833-230-5703 that was sent on July 12, 2023 at 8:51 AM.

54.     Plaintiff called back phone number shown on the text message (833-230-5703) to find out who was responsible for the illegal phone calls and text messages that all contained the same exact message from the artificial prerecorded messages as well as the text messages that all contained the name Empower People as well as the exact same artificial voice message when the call back number was dialed out and after going through prompts, Plaintiff was connected to a representative with who Identified herself as Eva from Empower People which is a hardship debt relief program.

55.     Eva asked Plaintiff multiple qualifying questions about his credit card and tax debt in order to qualify for their program.

56.     Eva then advised Plaintiff he prequalified and was going to connect Plaintiff with her "senior tax advisor".

57.     An agent by the name of Larry Jones who identified himself from "NATIONAL" from a full service tax service resolution center accepted the transfer from Eva from Empower People.

58.     Plaintiff agreed to have a free consultation for the sole purpose of identifying the company responsible for the unauthorized calls and text messages.

59.     Defendant's representatives accepted the live transfer from the female telemarketer Eva confirming Defendants hired unidentified telemarketers to make calls on behalf of their tax relief services.

60.    Defendants share a portal database with the telemarketers which allows them to transfer new client leads directly to Defendants.

61.    Larry Jones then asked Plaintiff qualifying questions about his debt and monthly income and solicited Plaintiff for a "Tax relief program" on behalf of Defendants.

62.    Plaintiff never gave his prior express written consent to receive any of the calls or text messages.

63.    On the same day July 12, 2023, Plaintiff received an email from "Larry Jones" from ljones@ntastax.com with her direct contact info and website link and contract containing the DocuSign that identified the company responsible for the calls which identified National Tax Advisory Servies.

64.    On the day July 14, 2023, Plaintiff to Larry Jones's email advising Plaintiff was not interested and remove him from all of their calling lists.

65.    Plaintiff continued to receive unauthorized prerecorded calls and text messages from Empower People soliciting debt relief after telling Larry Jones to remove him from all calling lists.

66.    On August 8, 2023, at 2:41 PM, Plaintiff made an outbound call responding to a text message from phone number 916-439-8117 from Empower People with a call back number shown in text message of 833-390-1651 that was sent on August 8, 2023 at 12:28 PM.

67.    Plaintiff called back phone number shown on the text message (833-390-1651) to find out who was responsible for the illegal phone calls and text messages that all contained the same exact message from the artificial prerecorded messages as well as the text messages that all contained the name Empower People as well as the exact same artificial voice message when the call back number was dialed out and after going through prompts, Plaintiff was connected to a

representative who Identified herself as Megan from Empower People which is a hardship tax relief program.

68.     Megan asked Plaintiff multiple qualifying questions about his credit card and tax debt in order to qualify for their program.

69.     Megan then advised Plaintiff he prequalified and was going to connect Plaintiff with her "senior tax advisor".

70.     An agent by the name of Tommy who identified himself from "Tax Group" spoke with Defendant on behalf of the Empower People telemarking agent and attempted to transfer to another agent.

71.     Plaintiff ended up speaking with another agent who identified herself as Paula from "Tax Relief Helpers" advised that I was speaking with a male representative from "Tax Group", and he is the agent she was transferring to.

72.     Plaintiff agreed to have a free consultation for the sole purpose of identifying the company responsible for the unauthorized calls and text messages.

73.     Defendant's representatives accepted the live transfer from the female telemarketer Megan confirming Defendants hired unidentified telemarketers to make calls on behalf of their tax relief services.

74.     Defendants share a portal database with the telemarketers which allows them to transfer new client leads directly to Defendants.

75.     Paula then asked Plaintiff qualifying questions about his tax debt and monthly income and solicited Plaintiff for a "Tax relief program" on behalf of Defendants.

76.     Plaintiff never gave his prior express written consent to receive any of the calls or text messages.

77.    On the same day August 8, 2023, Plaintiff received an email from "Paula Davis" "Tax

Advisor" from pdavis@ntastax.com with her direct contact info and website link and contract

containing the DocuSign that identified the company responsible for the calls which identified

National Tax Advisory Servies.

78.    Plaintiff received the following calls/text messages in Table A to his phone ending in

6018 from Empower calling on behalf of Defendants National and Tax Relief Helpers and Tax

Relief Helpers.

 See TABLE.

Table A:

| 6018 | | | | |
|------|------|------|------|------|
| 6/1/2023 | 10:54 AM | 339-220-6467 | Automated Text Message | Empower People: the relief application you submitted has been approved. Call now: +18333901651 Stop to opt-out Stop to End |
| 6/6/2023 | 12:10 PM | 855-583-2705 | Automated Text Message | Liability free: We hope this message reaches you. It's not to late to enroll if you call today: +18555741250 to opt out Stop to End |
| 6/12/2023 | 1:36 PM | 916-439-8117 | Automated Text Message | Liability free: We hope this message reaches you. Its not to late to enroll if you call today: +18775414680 to opt out Stop to End |
| 6/12/2023 | 3:00 PM | 806-207-3190 | Prerecorded Voice Message | LEFT CALL BACK NUMBER 877-498-0274 |
| 6/29/2023 | 9:12 AM | 385-297-0220 | Automated Text Message | Liability free: We hope this message reaches you. Its not to late to enroll if you call today: +18778913018 to opt out Stop to End |

| | | | | Liability free: We hope this message reaches you. Its not to late to enroll if you call today: +18332305703 to opt out Stop to End |
|---|---|---|---|---|
| 7/12/2023 | 8:51 AM | 385-297-0254 | Automated Text Message | |
| 7/18/2023 | 4:29 PM | 930-218-8165 | Prerecorded Voice Message | LEFT CALL BACK NUMBER 844-216-1538 |
| 7/19/2023 | 9:08 AM | 681-822-9589 | Prerecorded Voice Message | LEFT CALL BACK NUMBER 877-498-0274 |
| 7/20/2023 | 9:05 AM | 979-246-0704 | Prerecorded Voice Message | LEFT CALL BACK NUMBER 855-451-6766 |
| 7/24/2023 | 2:28 PM | 435-254-3054 | Prerecorded Voice Message | LEFT CALL BACK NUMBER 855-451-6766 |
| 8/1/2023 | 10:13 AM | 646-754-5446 | Prerecorded Voice Message | LEFT CALL BACK NUMBER 844-216-1538 |
| 8/8/2023 | 12:28 PM | 916-439-8117 | Automated Text Message | Liability free: We hope this message reaches you. Its not to late to enroll if you call today: +18333901651 to opt out Stop to End |

79.    Defendants employ outrageous, aggressive, and illegal sales techniques that violate multiple federal laws and state consumer statutes.

80.    Defendants do not have a solicitation registration certificate on file with the Texas Secretary of State as required to make telephone solicitations to Texas residents. The plaintiff is a Texas resident.

81.    On information and belief, the Defendants did not train its agents who engaged in telemarketing on the existence and use of any do-not-call list.

82.    Defendants participated in, facilitated, directed, authorized, knew of or willfully ignored the false and misleading sales practices and unlawful robocalling, while knowing facts that required a reasonable person to investigate further, and approved, and ratified the conduct of

their employees, agents, and co-conspirators to engage in the false and misleading sales practices and unlawful robocalling.

83.     Defendants have knowledge of and have adopted and maintained TCPA violations as a sales strategy.

84.     Defendants refuse to take any action to stop or curtail the unlawful sales practices and robocalling because these practices benefit Defendants financially.

85.     Plaintiff never consented to receive the calls alleged herein. Plaintiff had no relationship with Defendants prior to the calls alleged herein.

## VICARIOUS LIABILITY OF DEFENDANTS NATIONAL TAX ADVISORY, TAX RELIEF HELPERS

86.     Defendants are vicariously liable for the telemarketing calls that generated the lead on their behalf.

87.     The FCC is tasked with promulgating rules and orders related to enforcement of the TCPA. 47 U.S.C. § 227(b)(2).

88.     The FCC has explained that its "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." In re Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991, 10 FCC Rcd. 12391, 12397 ¶ 13 (1995).

89.     The FCC reiterated that a company on whose behalf a telephone call is made bears the responsibility for any violations. In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, 23 FCC Rcd. 559, 565 ¶ 10 (2008) (recognizing "on behalf of" liability in the context of an autodialed or prerecorded message call sent to a consumer by a third party on another entity's behalf under 47 U.S.C. § 227(b)).

90.     The FCC confirmed this principle in a declaratory ruling holding that sellers such as Post

may not avoid liability by outsourcing telemarketing: [A]llowing the seller to avoid potential

liability by outsourcing its telemarketing activities to unsupervised third parties would leave

consumers in many cases without an effective remedy for telemarketing intrusions. This would

particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside the

United States, as is often the case. Even where third-party telemarketers are identifiable, solvent,

and amenable to judgment limiting liability to the telemarketer that physically places the call

would make enforcement in many cases substantially more expensive and less efficient, since

consumers (or law enforcement agencies) would be required to sue each marketer separately in

order to obtain effective relief. As the FTC noted, because sellers may have thousands of

independent marketers, suing one or a few of them is unlikely to make a substantive difference

for consumer privacy. In re DISH Network, LLC, 28 FCC Rcd. 6574, 6588 ¶ 37 (2013) (footnote

omitted) (alteration marks and internal quotation marks omitted).

91.     More specifically, Dish held that, even in the absence of evidence of a formal contractual

relationship between the seller and the telemarketer, a seller is liable for telemarketing calls if the

telemarketer "has apparent (if not actual) authority" to make the calls. Id. at 6586 ¶ 34.

92.     The ruling rejected a narrow view of TCPA liability, including the assertion that a seller's

liability requires a finding of formal agency and immediate direction and control over the third-

party who placed the telemarketing call. Id. at 6587 ¶ 36 & n.107.

93.     To the contrary, the FCC—armed with extensive data about robocalls and Americans'

complaints about them—determined that vicarious liability is essential to serve the TCPA's

remedial purpose of protecting Americans from "unwanted telemarketing invasions." Id. at 6587

¶ 36.

94.    Vicarious liability is important because reputable, traceable, and solvent companies that benefit from illegal telemarketing are "in the best position to monitor and police TCPA compliance by third-party telemarketers." Id. at 6588 ¶ 37.

95.    Defendants are legally responsible for ensuring that Empower People that make telemarketing calls on behalf of Defendants comply with the TCPA when so doing.

96.    Defendants knowingly and actively accepted business from Empower People that originated through illegal telemarketing.

97.    Defendants knew (or reasonably should have known) that Empower People was violating the TCPA on their behalf but failed to take effective steps within their power to force the telemarketer to cease that conduct.

98.    By hiring a company to make calls on its behalf, Defendants "manifest[ed] assent to another person . . . that the agent shall act on the principal's behalf and subject to the principal's control" as described in the Restatement (Third) of Agency ("Restatement").

99.    Moreover, Defendants maintained interim control over the actions of Empower People.

100.    For example, Defendants had absolute control over whether, and under what circumstances, they would accept a customer from Empower People.

101.    Furthermore, Defendants had day-to-day control over Empower People including the ability to prohibit them from using an ATDS to contact potential customers of Defendants and the ability to require them to respect the National Do Not Call Registry.

102.    Defendants also gave interim instructions to Empower People by providing lead-qualifying instructions and lead volume limits.

103.    Defendants donned Empower People with apparent authority to make the calls at issue. Thus, Empower People pitched Defendants' tax relief services in the abstract.

16

104.    Apparent authority turns on whether a third party believes the principal authorized its agent to act and the belief is "traceable" to a manifestation of the principal. Restatement § 2.03 cmt. c.

105.    "[A]pparent authority can arise in multiple ways and does not require that 'a principal's manifestation must be directed to a specific third party in a communication made directly to that person.'" Dish, 28 FCC Rcd. at 6586 ¶ 34 n.102 (quoting Restatement § 2.03 cmt. c).

106.    A principal may make a manifestation "by directing an agent to make statements to third parties or directing or designating an agent to perform acts or conduct negotiations, placing an agent in a position within an organization, or placing an agent in charge of a transaction or situation." Restatement § 2.03 cmt. c.

107.    Empower People transferred customer information, including Plaintiff's contact information, directly to Defendants. Thus, Empower People had the "ability . . . to enter consumer information into the Defendants sales or customer systems," which the FCC has explained to show apparent agency. Dish, 28 FCC Rcd. at 6592 ¶ 46.

108.    Finally, the FCC has held that called parties may obtain "evidence of these kinds of relationships . . . through discovery, if they are not independently privy to such information." Id. at 6592-93 ¶ 46. Evidence of circumstances pointing to apparent authority on behalf of the telemarketer "should be sufficient to place upon the seller the burden of demonstrating that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent." Id. at 6593 ¶ 46.

109.    Defendants are the liable parties as the direct beneficiary of the illegal telemarketing calls as they stood to gain Plaintiff as a customer when Empower People solicited Plaintiff for tax relief services on behalf of all Defendants.

17

## DEFENDANT LEVY IS PERSONALLY LIABLE

110.    Defendant Levy refuses to take any action to stop or curtail the unlawful sales practices and illegal unauthorized phone calls because these practices benefit Defendant Levy financially consumers enroll into a tax relief program from Defendant.

111.    "If the officer directly participated in or authorized the statutory violation, even though acting on behalf of the corporation, he may be personally liable.  See *United States v Pollution Serv. Of Oswego, Inc.*, 763 F.2d 133, 134-135 (2nd Cir.1985)

112.    The "well-settled" tort rule provides that "when corporate officers directly participate in or authorized the commission of a wrongful act, even if the act is done on behalf of the corporation, they may be personally liable." *General Motos Acceptance Corp. v. Bates*, 954 F.2d 1081, 1085 (5th Cir. 1992).  The Fifth Circuit has elaborated that "the thrust of the general [tort] rule is that the officer to be held personally liable must have some direct, personal participation in the tort, as where the defendant was the 'guiding spirit' behind the wrongful conduct....or the 'central figure' in the challenged corporate activity." *Mozingo v. Correct Mfg. Corp.*, 752 F.2d 168, 174 (5th Cirt. 1985) (Citing *Escude Cruz v. Ortho Pharmaceutical Corp.*, 619 F. 2d 902, 907 (1st Cir.1980)) (Citing *Texas v. American Blastfax, Inc.*, 164 F. Supp. 2d 892 (W.D. Tex. 2001)

113.    Quoting Texas v. American Blastfax:

> The Court finds the above principles applicable to the TCPA that is, an officer may be personally liable under the TCPA if he had direct, personal participation in or personally authorized the conduct found to have violated the statute, and was not merely tangentially involved.  Individuals who directly (and here, knowingly and willfully) violate the TCPA should not escape liability solely because they are corporate officers.  As the State persuasive argues, to hold otherwise would allow the individual defendants to simply dissolve Blastfax, set-up a new shell corporation, and repeat their conduct.  Congress surely did not intend to permit such a result in passing the TCPA.

18

To be clear, the Court finds Greg and Michael Horne were the "guiding spirits" an the "central figures" behind the TCPA violations. They were the two persons who controlled all of Blastfax's day-to-day operations. They both had direct, personal involvement in and ultimate control over every aspect of Blastfax's wrongful contuct that violate the TCPA, and/or directly controlled and authorized this conduct. And they did so with their eyes and pocketbooks wide open. After October 5, 2000, Greg and Michael Horne had good reason to believe they were running a business that violated the TCPA. On February 9, 2001, they knew they were. Yet they continued to direct their company to send unsolicited intrastate fax advertisements. This is fare more than a simple derivative liability case. Accordingly, the Court *899 holds defendants Greg and Michael Horne are jointly and severally liable with Defendant Blastfax, Inc., for all TCPA damages in this lawsuit." Texas v. American Blastfax, Inc., 164 F. Supp. 2d 892 (W.D. Tex. 2001)

114.    The Same Court held that corporate officers were also personally liable for DTPA violations

The State contends Greg and Michael Horne are personally liable for any DTPA damages because they were solely responsible for the violating conduct…..For the same reasons discussed in finding the individual defendants personally liable under the TCPA, the Court agrees. See, e.g., *Barclay v. Johnson*, 686 S.W.2d 334, 336-37 (Tex. Civ. App.-Houston [1ST Dist.] 1985, no writ) (finding personal liability for corporate officer in DTPA misrepresentation claim, based on general rule that "a corporate agent knowingly participating in a tortious of fraudulent act may be held individually liable, even though he performed the act as an agent for the corporation……Accordingly, the Court finds defendants American Blastfax, Inc., Greg Horne and Michael Horne are jointly and severally liable for $6,000 in damages for their violations of the DTPA." *Texas v. American Blastfax, Inc.*, 164 F. Supp. 2d 892 (W.D. Tex. 2001

115.    At all times material to the Complaint, acting alone or in concert with others, Defendant Levy has formulated, directed, controlled, had the authority to control, or participated in the acts and practices of Defendant NATIONAL including the acts or practices set forth in this Complaint.

116.    Defendant Levy is the principal director and operator of Defendant NATIONAL controls the day-to-day operations of Defendant NATIONAL and directed Empower to make TCPA violating phone calls to solicit tax relief services on behalf of Defendant NATIONAL.

117.    Defendant Levy knowingly and willfully ignores the law. These violations are the direct result of the instructions Defendant Levy has given to Empower.

118.    Defendant Levy is not merely a bystander and is the mastermind that schemed, planned, directed, initiated, and controlled the illegal and fraudulent behavior.

119.    Defendant Levy is well aware his conduct violated the TCPA and Tex. DPTA and refused to alter his behavior.  Defendant Levy is the sole director of Defendant NATIONAL and the only person with the power to make the unlawful, fraudulent, and unethical behavior stop.  Yet, Defendant Levy has taken no steps to stop the behavior because the behavior benefits Defendants NATIONAL and Levy financially.

120.    Defendant Levy should be held jointly and severally liable for both the TCPA violations and via the Tex. DTPA because he actually committed the conduct that violated the TCPA and Tex. DTPA, and/or he actively oversaw and directed this conduct.

121.    Defendant Levy should be held liable because to do otherwise would simply allow him to dissolve Defendant NATIONAL and set up a new corporation and repeat his conduct.  This would result in both the TCPA and DTPA being unenforceable.

### Violations of the Texas Business and Commerce Code § 302.101

122.    The actions of the Defendants violated the Texas Business and Commerce Code 302.101 by placing solicitation phone calls to a Texas resident without having a registration certificate and bond on file with the Texas Secretary of State.

123.    Texas Business and Commerce Code § 302.101 provides a private right of action. A violation of Chapter 302 "is a false, misleading, or deceptive act or practice under Subchapter E, Chapter 17" and is enforceable as such: "A public or private right or remedy prescribed by

Subchapter E, Chapter 17, may be used to enforce [Chapter 302." Tex. Bus. & Com. Code §

302.303.

124.    The use or employment by any person of a false, misleading, or deceptive act or practice"

causes "economic damages or damages for mental anguish." Tex. Bus. & Com. Code § 17.50.

125.    Texas Business and Commerce Code §302.101 states that a person (1) "may not make a

telephone solicitation" (a) "from a location in [Texas]" or (b) "to a purchaser located in [Texas],"

(2) "unless the [person] holds a registration certificate for the business location from which the

telephone solicitation is made." Tex. Bus. & Com. Code § 302.101(a).

126.    Under Texas Business and Commerce Code § 302.302 Plaintiff is entitled to seek

damages of up to $5000 per violation of §302.101.

## INJURY, HARM, DAMAGES, and ACTUAL DAMAGES AS A RESULT OF THE CALLS

127.    Plaintiff has been annoyed, harassed, and irritated by robocalls placed by the Defendants

and other similar companies.

128.    Plaintiff has been denied the use of his phone, enjoyment of his phone, and had the

functionality of his phone decreased because of unnecessary charging, erosion of phone memory,

and had his privacy invaded by the harassing robocalls.

129.    Plaintiff incorporates the foregoing allegations as if fully set forth herein.

130.    Defendants and/or their agents placed calls to Plaintiff's cellular telephone.

131.    Plaintiff never consented to receive calls from Defendants. Plaintiff has no relationship

with Defendants.

132.    Defendants' calls were made for the purposes of advertising and marketing Defendants' tax debt relief services. These calls constituted commercial advertising and telemarketing as contemplated by the TCPA.

133.    The calls were made using an artificial or prerecorded voice message to the cellular phone of Plaintiff in violation of 47 U.S.C. § 227(b)(1)(A)(iii) and (B).

134.    As a result of their unlawful conduct, Defendant repeatedly invaded the personal privacy of Plaintiffs, causing Plaintiff to suffer damages and, under 47 U.S.C. § 227(b)(3)(B), entitling Plaintiff to recover $500 in statutory damages for each violation and an injunction requiring Defendants to stop their unlawful calling campaigns.

## COUNT ONE:

### Violations of the TCPA, 47 U.S.C. § 227(b)(1)(A)(iii), by Automated Telemarketing Without Prior Express Written Consent

### (Against All Defendants)

135.    Plaintiff realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

136.    Defendants and/or their affiliates or telemarketers violated the TCPA, 47 U.S.C. § 227(b)(1)(A)(iii), at least twelve (12) times by placing non-emergency telemarketing calls to Plaintiff's cellular telephone number using an automatic telephone dialing system without his prior express written consent.

137.    Plaintiff was statutorily damaged at least twelve (12) times under 47 U.S.C. § 227(b)(3)(B) by the Defendants by the telephone calls described above, in the amount of $500.00 per call.

138.    Plaintiff was further statutorily damaged because Defendants willfully or knowingly violated this subsection of the TCPA. Plaintiff requests that the court treble the damage amount to $1,500.00 as permitted under U.S.C. § 227(b)(3)(C) for each and every willful and/or knowing violation.

139.    Plaintiff is also entitled to and does seek an injunction prohibiting Defendants and their affiliates and agents from violating the TCPA, 47 U.S.C. § 227(b)(1)(A)(iii), by placing non-emergency telemarketing calls to any cellular telephone number using an ATDS and/or without prior express written consent.

## COUNT TWO:

**(Violation of the TCPA "Sales Call/DNC" Prohibition, 47 U.S.C. 227(c), and 47 C.F.R. §**

**64.1200(C))**

**(Against All Defendants)**

140.    Plaintiff realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

141.    The calls were to Plaintiff's private residential telephone number which was successfully registered on the National Do-Not-Call Registry more than thirty-one (31) days prior to the calls for the purposes of commercial solicitation, in violation of 47 U.S.C. § 227(c)(3)(F), and 47 C.F.R. § 64.1200(c)(2).

142.    Plaintiff was statutorily damaged at least twelve (12) times under 47 U.S.C. § 227(c)(3)(F) by Defendants by the telemarketing calls described above, in the amount of $500.00 per call.

143.    Plaintiff was further statutorily damaged because Defendants willfully and/ or knowingly violated this subsection of the TCPA. Plaintiff requests that the court treble the damage amount as permitted under U.S.C. § 227(c)(5) for each and every willful and/or knowing violation.

144.    Plaintiff is entitled to an award up to $1,500 in damages for each knowing or willful violation of 47 U.S.C. § 227(c)(3)(F).

## COUNT THREE:

**Telemarketing Without Mandated Safeguards, 47 C.F.R. § 64.1200(d)**

**(Against All Defendants)**

145.    Plaintiff incorporates the forgoing allegations as if fully set forth herein.

146.    The foregoing acts and omissions of Defendants and/or their affiliates or agents constitute multiple violations of FCC regulations by making telemarketing solicitations despite lacking:

    **a.**    written policy, available upon demand, for maintaining a do-not-call list, in violation of 47 C.F.R. § 64.1200(d)(1) 1 ;

    **b.**    training for the individuals involved in the telemarketing on the existence of and use of a do-not-call list, in violation of 47 C.F.R. § 64.1200(d)(2) 2 ; and,

    **c.**    in the solicitations, the name of the individual caller and the name of the person or entity on whose behalf the call is being made, in violation of 47 C.F.R. § 64.1200(d)(4).3

147.    Plaintiff is entitled to an award of at least $500 in damages for each such violation. 47 U.S.C. § 227(c)(5)(B).

148.    Plaintiff is entitled to an award of up to $1,500 in damages for each such knowing or willful violation. 47 U.S.C. § 227(c)(5).

## COUNT FOUR

### Violations of The Texas Business and Commerce Code 305.053

### (Against All Defendants)

149.    Plaintiff incorporates the foregoing allegations as if set forth herein.

150.    The foregoing acts and omissions of Defendants and/or their affiliates or agents constitute multiple violations of the Texas Business and Commerce Code 305.053, by making non-emergency telemarketing robocalls to Mr. Guadian cellular telephone number without his prior express written consent in violation of 47 USC 227 et seq. The 1 See id. at 425 (codifying a June 26, 2003 FCC order). 2 See id. at 425 (codifying a June 26, 2003 FCC order). 3 See id. at 425 (codifying a June 26, 2003 FCC order Defendants violated 47 USC 227(d) and 47 USC 227(d)(3) and 47 USC 227(e) by using an ATDS that does not comply with the technical and procedural standards under this subsection.

151.    Plaintiff is entitled to an award of at least $500 in damages for each such violation. Texas Business and Commerce Code 305.053(b)

152.    Plaintiff is entitled to an award of up to $1,500 in damages for each such knowing or willful violation. Texas Business and Commerce Code 305.053(c)

## COUNT FIVE

### (Violations of The Texas Business and Commerce Code 302.101)

### (Against All Defendants)

153.    Plaintiff incorporates the foregoing allegations as if set forth herein. by reference each and every allegation set forth in the preceding paragraphs.

154.    The foregoing acts and omissions of Defendants and/or their affiliates or agents constitute multiple violations of the Texas Business and Commerce Code 302.101, by making non-registered solicitation calls to Plaintiff's cellular telephone number without his prior express written consent.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Manuel Guadian prays for judgment against the Defendants jointly and severally as follows:

A. Leave to amend this Complaint to name additional DOES as they are identified and to conform to the evidence presented at trial;

B. A declaration that actions complained of herein by Defendants violates the TCPA and Texas state law;

C. An award of $1500 per call in statutory damages arising from the TCPA §227(b) intentional violations jointly and severally against the individual and corporation for 12 calls.

D. An award of $1500 per call in statutory damages arising from the TCPA §227(c) intentional violations jointly and severally against the individual and corporation for 12 calls.

E. An award of $1,500 in statutory damages arising from violations of the Texas Business and Commerce code 305.053 intentional violations jointly and severally against the individual and corporation for 12 calls.

F. An injunction enjoining Defendants and their affiliates and agents from engaging in the unlawful conduct set forth herein;

**G.** An award of $5,000 in statutory damages arising from violations of the Texas Business and Commerce code 302.101 for 6 calls.

**H.** An award to Mr. Guadian of damages, as allowed by law under the TCPA

**I.** An award to Mr. Guadian of interest, costs and attorneys' fees, as allowed by law and equity.

**J.** Such further relief as the Court deems necessary, just, and proper.

### **JURY DEMAND**

August 25, 2023,                     Respectfully Submitted,

Manuel Guadian
Plaintiff, Pro Se
3805 Tierra Fiji Ln
El Paso, Texas 79938
915-251-6018
guadianmanuel7@gmail.com